**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-01207-CMA

LESA G. FIRKINS,

    Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lesa Firkins appealed from the denial of disability benefits by the Social Security Commissioner ("Commissioner"). After a hearing on Plaintiff's application, the Administrative Law Judge ("ALJ") found that Plaintiff was not "disabled" within the meaning of the Social Security Act ("Act") because Plaintiff could perform gainful work within the regional and national economies despite her spinal injury.

## BACKGROUND

**I.**    **MEDICAL HISTORY**

Plaintiff was born April 23, 1969, and has a high school education. At the time of the ALJ hearing she was married with children. (Administrative Record ("Admin.") at 232.) She alleges that she suffered a spinal injury in an October 2005 auto accident. The injury causes her arm and neck pain, weakness and numbness, and she alleges that she cannot lift more than eight or ten pounds and has trouble sitting, standing, or

walking for extended periods of time.

Plaintiff received treatment for the accident at Delta County Memorial Hospital in October 2005. Radiology records from the hospital reflect that Plaintiff's "cervical spine is normal in curvature and alignment. There is no evidence of fracture or subluxation. Vertebral body height is well maintained throughout. No significant degenerative disc disease is present." (*Id.* at 91.)

Plaintiff also saw Dr. Samuel Jahani for evaluation and treatment. (*Id.* at 97-112.) In October 2005, Dr. Jahani noted that Plaintiff had "muscle spasms extending from the bottom of the neck to the mid neck and in the upper back region." (*Id.* at 112.) He treated her with a trigger point injection and told her to continue with her medications, Flexeril and Vicodin. (*Id.*) Dr. Jahani would repeat a similar version of this diagnosis and treatment up through the date of the ALJ hearing.

Dr. Jahani noted in November 2005 that Plaintiff was "definitely making progress" (*id.* at 110), but, one month later, he noted that her arm and neck pain continued and that the pain had "not gotten any better." (*Id.* at 108.) Plaintiff also reported that she had a worsening headache and that her pain had spread to her left arm. (*Id.*) In January 2006, Plaintiff alleges that she dropped a pan of hot grease due to her left arm pain/weakness. (*Id.* at 104.) Dr. Jahani noted at the time that Plaintiff displayed symptoms of neuropathy and radiculopathy, but that Plaintiff would not undergo an MRI because she was "freaked out." (*Id.* at 106.)

Plaintiff eventually did receive an MRI in February 2006. Dr. Eduardo Seda reported that the MRI revealed a "mild loss of normal cervical lordosis centered at C6-7[,]" "mild disc desiccation at C3-4, C5-6 and C6-7[,]" and "narrow-based small central

disc protrusions with mild dural sac indentations at C5-6 and C6-7." (*Id.* at 114.) Otherwise, the MRI was negative. (*Id.*) Dr. Jahani also interpreted the MRI and on February 26, 2006, he opined that the MRI "shows a disc bulge at C5-6 and C6-7." (*Id.* at 102.) Dr. Jahani stated that he believed Plaintiff was "definitely not a surgical candidate" and that she should continue with physical therapy and pain medication. (*Id.*)

Dr. Jahani continued to see Plaintiff throughout the spring and summer of 2006. He repeatedly noted that Plaintiff complained of arm, neck and leg pain and that she "is unable to stay on her feet very long." (*Id.* at 97.) His records indicate that she stopped physical therapy in March 2006, but that she continued to try different medications with varying degrees of success. (*Id.* at 202.) For example, in July 2006, Dr. Jahani reported that Plaintiff had "a good response to Cymbalta"[1] (*Id.* at 200), but that she could not take Lyrica.[2] (*Id.* at 195.)

In August 2006, Dr. Jahani reported that he filled out a functional capacity report. (*Id.*) He stated in his notes that, "I do not believe that the patient is able to work and filled out the functional capacity as such." (*Id.*) Dr. Jahani's "Physical Residual Functional Capacity Questionnaire" identifies relatively severe limitations on Plaintiff's physical abilities. He checked boxes indicating that Plaintiff could walk only two city blocks, sit for only twenty minutes and stand for only five minutes per episode, for a total

---

[1] Cymbalta is an anti-depressant that is sometimes used to alleviate pain symptoms.

[2] Lyrica is a pain medication used for treatment of neuropathic pain and fibromyalgia.

of less than two hours per eight-hour day.  (*Id.* at 117-18.)  He checked boxes indicating that Plaintiff could never lift more than ten pounds and only rarely lift less than ten pounds, but noted that she did not have any limitations on her ability to reach, handle or finger.  (*Id.* at 118-19.)  Dr. Jahani's Questionnaire also stated that Plaintiff would need frequent breaks during the day and that she would miss more than four days of work per month.  (*Id.*)

Dr. Jahani's diagnosis did not change through the fall of 2006.  In September 2006, he reported that Plaintiff complained of left arm pain and she continued to demonstrate signs of neuropathy and radiculopathy.  (*Id.* at 191.)  However, certain drugs appeared to help, including Nuerontin, Cymbalta and Vicodin.  (*Id.*)  However, regardless of the drug treatment, Dr. Jahani felt that Plaintiff would "definitely need post maximum medical improvement care."  (*Id.*)  By November 2006, Dr. Jahani stated that Plaintiff's pain was stable and that she was "very close to maximum medical improvement."  (*Id.* at 187, 189.)

His diagnosis of Plaintiff's condition improved somewhat in 2007; he again noted that Plaintiff's pain was "stable" and the medication was "doing a good job."  (*Id.* at 183.)  Although Dr. Jahani felt that Plaintiff could not return to her previous work, he reported that Plaintiff "might benefit from vocational rehabilitation because she might be able to do a sedentary job."  (*Id.*)

Plaintiff also received physical therapy on a regular basis from October 2005 through March 2006.  (*Id.* at 120-183.)  The physical therapy treatment notes reflect that Plaintiff complained of headaches, neck and arm pain, and reduced range of motion.  However, the physical therapy records do not contain any objective medical test results.

## II.     PROCEDURAL HISTORY

### A.     The ALJ Hearing

The ALJ held a hearing on Plaintiff's application on June 6, 2007.  (*Id.* at 218-32.) Plaintiff began by testifying about general personal information, *e.g.,* her address, education and family.  (*Id.* at 218.)  She also testified regarding the treatment she received from Dr. Jahani, although she did not go into specifics.  (*Id.* at 219.)

She then testified regarding her work history.  She stated that she worked for Dr. George Evans, part-time, seven hours per week from August 2005 through October 2005.  (*Id.* at 219-20.)  She also worked for Rocky Mountain Nurses from May 2005 through October 2005.  (*Id.*)  She provided in-home personal care for Rocky Mountain's clients, *e.g.*, she would do dishes, laundry, vacuum, move furniture or dust.  (*Id.* at 220.) Plaintiff testified that she could no longer work at Rocky Mountain because she could not stand on her feet or lift anything over eight pounds.  (*Id.*)  Prior to Rocky Mountain, Plaintiff worked at Crossroads Assisted Living from 2002 through 2004.  (*Id.*)  At Crossroads, Plaintiff cleaned the residents' rooms, served them meals, did laundry and assisted the residents with items weighing from 50 to 100 pounds.  (*Id.*)  Again, she stated that she could not perform this job after her accident.  (*Id.* at 221.)  Before Crossroads, Plaintiff worked as a waitress at various restaurants and diners.  She stated that as a waitress, she lifted up to 50-pound trays of food.  (*Id.* at 222.)  Prior to waitressing, Plaintiff worked as a personal care provider for two other assisted living companies.[3]  Her work for these companies was similar to her Crossroads job; she had

---

[3] The hearing transcript is unclear on the name of the company that Plaintiff worked for, the transcript identifies the company as "JBZZ Living or By ZZ Living."  (*Id.*

to be on her feet for long periods of time and she had to lift up to 150 pounds (she assisted non-ambulatory residents getting into and out of bed).  (*Id.* at 223.)

She also testified regarding her medical symptoms.  She stated that the Cymbalta does not totally treat her depression, but that it "takes . . . the edge of it off." (*Id.* at 225.)  She also stated that she could only concentrate for five or ten minutes at a time, that she suffers from pain in her neck and arms and that she has a headache on a continual basis, but sometimes the headache flares up into migraine-like pain.  (*Id.*) She stated that her neck pain limits her range of motion and prevents her from looking up or down for more than five seconds.  (*Id.* at 227.)  She alleged that her left arm pain caused her trouble with her fingers and that she has trouble picking up items like coins or paper clips.  (*Id.* at 228.)  Her headaches also affected her right arm and hands.  (*Id.* at 229.)  She stated that she could lift up to eight pounds, but that weakness in her arms prevented her from lifting anything more weighty.  (*Id.* at 230-31.)

Plaintiff stated that her back and neck pain limited her ability to sit for longer than twenty minutes.  (*Id.* at 230.)  She alleged that she could walk approximately two blocks and stand for no longer than fifteen minutes before having to sit down.  (*Id.*)  She believed that she could not stoop, bend, crouch or crawl without neck pain and that she had problems with sleeping.  (*Id.* at 231.)

The vocational expert, Douglas Prutting testified next via telephone.  Mr. Prutting described the vocational classifications of Plaintiff's previous healthcare and food service work and he answered a series of hypothetical questions.  (*Id.* at 234-35.)  The

---

at 223.)

ALJ first asked Mr. Prutting to assume a person with the same education and age as Plaintiff, who was limited to light work with additional nonexertional limitations on her ability to do above-chest-level work with her nondominant upper extremity.  (*Id.* at 235.) The ALJ asked Mr. Prutting if an individual with these functional abilities would be able to perform work like that previously performed by Plaintiff.  (*Id.*)  Mr. Prutting stated that such a person could work in the healthcare administrator position, the position Plaintiff occupied at Dr. Evans' office, depending on the amount of keyboarding that was necessary, but that her other previous jobs would be precluded.  (*Id.*)  Mr. Prutting identified three jobs available in Colorado for a person meeting the ALJ's hypothetical limitations:  social services aide, cashier and companion.  (*Id.*)

The ALJ then asked Mr. Prutting a second hypothetical with more restrictive limitations.  The ALJ asked Mr. Prutting to assume a person with Plaintiff's age and education who is limited to sedentary work and also must have the option to sit, stand or walk, but can sit for no longer than twenty minutes at a time for a total of two hours per day, stand for no longer than five minutes for a total of less than two hours per day and walk for less than two hours per day.  This person would need unscheduled fifteen- to thirty-minute breaks every one to two hours and could rarely look down, up or turn her head.  (*Id.* at 236.)  Mr. Prutting stated that no jobs were available for such a person.  (*Id.*)

On cross-examination by Plaintiff's counsel, Mr. Prutting stated that there would be some erosion in the number of jobs available for the first hypothetical person if that person had a 50% restriction on the ability to grab, grasp, turn or twist objects with her nondominant hand.  (*Id.* at 238.)  Mr. Prutting testified that the number of cashier

positions would erode by 50% and the companion positions would erode by 25%. The erosion would be the same if the hypothetical person was limited in her ability to reach with the nondominant arm/hand, as well. (*Id.* at 239.)

### B. The ALJ's Written Decision

The ALJ issued a written decision denying Plaintiff's application on August 20, 2007. (*Id.* at 13-20.) The ALJ found that Plaintiff met insured status requirements from October 26, 2005, through September 30, 2009. He found that she had not engaged in substantial gainful activity since October 26, 2005; she had a disorder of the cervical spine that was a severe impairment but the impairment did not meet an impairment within the Social Security listings; and that she had the functional capacity to perform light work with certain additional restrictions. (*Id.* at 15.) More specifically, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform all light work[4] unless it required the performance of over chest level work, pushing and pulling and fine dexterity with the non-dominant upper extremity. (*Id.* at 15-16.) In making this RFC determination, the ALJ stated that he relied on all of the evidence in the record regarding Plaintiff's alleged symptoms as based on the guidance provided in 20 C.F.R. § 404.1529. Thus, the ALJ tied each of his credibility and evidentiary decisions to his RFC analysis.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

In that regard, the ALJ concluded that the objective medical evidence in the record did not support Plaintiff's claims of debilitating pain. (*Id.* at 17.) He noted that Plaintiff refused to undergo an MRI in January 2006, and that this decision contradicted Plaintiff's allegations regarding the severity of her symptoms. (*Id.*) The ALJ also noted that the MRI results in the record indicated largely normal spinal conditions, with the only exception being mild cervical lordosis and mild disk desiccation. (*Id.*) Thus, the ALJ concluded that the MRIs did not support Plaintiff's allegations regarding the severity of her condition. (*Id.*)

The ALJ accorded Dr. Jahani's RFC opinion no weight because he found that they were not supported by the MRI evidence. The ALJ noted that there was no support for Dr. Jahani's diagnosis of radicular symptoms because the MRIs did not reflect nerve involvement. (*Id.* at 18.) The ALJ also found Dr. Jahani's RFC opinion contradicted with Dr. Jahani's own records reflecting that Plaintiff's condition had stabilized by the end of 2006. (*Id.*) The ALJ described some inconsistencies within Dr. Jahani's records, including the paradox between Dr. Jahani's opinion that Plaintiff could not concentrate for longer than five or ten minutes and his opinion that Plaintiff suffered from no psychological conditions. (*Id.*) The ALJ also noted that, "It does seem strange that [Plaintiff] has restrictions on her ability to walk but she does not have restrictions on reaching, handling, or finger when [Plaintiff's] chief complaint is neck and shoulder pain." (*Id.*)

The ALJ found that Plaintiff's testimony regarding her symptoms was not entirely credible. (*Id.*) The ALJ noted that Dr. Jahani's records indicated that certain medications were working, her condition was essentially stable by January 2007 and

that she might be able to perform sedentary work.  (*Id.*)  Thus, the ALJ found her allegations regarding the severity of her symptoms to lack objective medical support.

Given his RFC assessment, the ALJ found that Plaintiff could not return to her previous work.[5]  (*Id.*)  However, based on Mr. Prutting's testimony, the ALJ found that Plaintiff could perform jobs existing in the economy.  (*Id.*)  The ALJ specifically stated that Plaintiff could work as a social services aide, a cashier, and a companion.  (*Id.* at 20.)  Thus, the ALJ concluded that Plaintiff's application for benefits should be denied.

## **STANDARD OF REVIEW**

Section 405(g) of the Act establishes the scope of this Court's review of the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2006) (incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant part, that:

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g).

Thus, this Court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision.  *See* § 405(g); *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir.

---

[5] This conclusion conflicts somewhat with Mr. Prutting's testimony that Plaintiff could return to her position as a healthcare administrator.

1992).  The Court must uphold the Commissioner's decision if it is supported by substantial evidence.  See *Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This Court cannot re-weigh the evidence nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987).  That does not mean, however, that review is merely cursory.  To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also subject to reversal for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

## **ANALYSIS**

Under the standard of review described above and the applicable law described below, the Court will affirm the ALJ's decision.

**I.     APPLICABLE LAW**

A claimant must qualify for disability insurance benefits under the Social Security Act.  To do so, the claimant must meet the insured status requirements, be less than sixty-five years of age and under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In

proving disability, a claimant must make a prima facie showing that she is unable to return to the prior work she has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs the claimant could perform. *Frey*, 816 F.2d at 512.

      The Commissioner has established a five-step process to determine whether a claimant qualifies for disability insurance benefits. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See* 20 C.F.R. § 404.1520(a); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). First, the claimant must demonstrate that she is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits her physical or mental ability to do basic work activities. § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents her from performing work she has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, she is not disabled. 20 C.F.R. § 404.1520(e); *Williams*, 844 F.2d at 751. The fifth step requires the Commissioner to demonstrate that: (1) the claimant has the RFC to perform other work based on the claimant's age, education, past work experience; and (2) there is

availability of that type of work in the national economy.  *See*  20 C.F.R. § 404.1520(f); *Williams*, 844 F.2d at 751.

## II.     THE ALJ'S RFC DETERMINATION

Plaintiff first asserts that the ALJ erred in making his RFC determination because the ALJ failed to provide sufficient discussion of how the medical evidence supported his RFC determination.  Second, she argues that the ALJ failed to give Dr. Jahani's opinions adequate, controlling weight.  Neither argument is persuasive.

### A.     The ALJ Properly Discussed And Supported His RFC Assessment

Social Security Ruling ("SSR") 96-8p describes the ALJ's role in assessing and deciding a claimant's RFC.  *See* SSR 96-8p.  The Ruling states that an ALJ's RFC assessment must thoroughly discuss and analyze the objective medical and other evidence in the record, including the claimant's allegations of pain and other symptoms, resolve any inconsistencies in the evidence and "set forth a logical explanation of the effects of the symptoms, including pain, on the [claimant's] ability to work."  *Id.* at 7.  However, SSR 96-8p does not require the ALJ to prepare "a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record . . . ."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (10th Cir. 2005).

Plaintiff argues that the ALJ's RFC assessment is nothing more than a conclusory statement and that it lacks the necessary explanation of Plaintiff's ability to perform work activities required by SSR 96-8p. (Doc. # 10 at 7.)  She states that the ALJ should have discussed Plaintiff's functional ability (or lack thereof) to work eight hours per day, five days per week.  The Commissioner responds that the ALJ did not

13

need to perform a function-by-function analysis because the ALJ found some of Plaintiff's alleged impairments neither credible nor supported by the record. (Doc. # 11 at 20.)

The Court agrees with the Commissioner and finds that the ALJ's RFC analysis is more than adequate to survive appeal. The Court disagrees with Plaintiff that the ALJ provided only a conclusory analysis of Plaintiff's RFC. In fact, the ALJ provided considerable discussion of the medical evidence as it related to Plaintiff's capacity to perform work and the ALJ's decision includes a thorough analysis of Plaintiff's ability to work in the discussion of Dr. Jahani's opinions. The ALJ explains why he rejected some of Dr. Jahani's opinions regarding Plaintiff's functional capacity (*e.g.,* internal inconsistencies or lack of objective support) and why he accepted others and how those decision lead him to decide on an RFC of light work with certain nonexertional limitations. This type of explanation is exactly the level of discussion required by SSR 96-8p.

Plaintiff implies that the ALJ must follow some sort of formula in drafting his decision, but that is not required under SSR 96-8p. Nothing in the Act, Social Security Regulations, SSRs, or Tenth Circuit precedent requires the ALJ to conform to a rigid format for a written decision by repeating his functional analysis within the same paragraph as his RFC conclusion or using magic phrases like "eight-hour-work-day" or "five-day-work-week." Indeed, in cases like this one, because the ALJ found that many of Plaintiff's alleged limitations lacked credibility or medical support, he does not need to discuss each and every one of Plaintiff's alleged functional limitations. *See Bayliss*, 427 F.3d at 1217.

Therefore, the Court will overrule Plaintiff's first point of error because the ALJ conformed to the proper legal standard.

B.      The ALJ Gave Proper Weight to Dr. Jahani's Opinions

A treating physician's opinion regarding "the nature and extent of a claimant's disability is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with other substantial evidence in [the claimant's] case record.'"  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)) (alterations in original); *see also Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  If the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must "give good reasons" for the weight given to a treating physician's opinion.  20 C.F.R. § 416.927(d)(2); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (requiring ALJ to supply "specific, legitimate reasons" for rejecting opinion of treating physician).

Plaintiff argues that the ALJ erred by not giving Dr. Jahani's opinions regarding Plaintiff's functional capacity controlling weight.  Plaintiff contends that Dr. Jahani's opinions were consistent with other evidence in the record and supported by substantial objective medical evidence.  She also argues that the ALJ failed to analyze each of the factors in C.F.R. § 404.1527(d), which governs an ALJ's treatment of treating medical opinions.  The Commissioner responds that the ALJ's decision to afford Dr. Jahani's opinion no weight is supported by specific, legitimate reasons that comply with Tenth Circuit precedent and the Social Security Regulations.

The Court concludes that the ALJ applied the correct standard and that his

analysis of Dr. Jahani's opinions is supported by substantial evidence. As the ALJ stated in his opinion, Dr. Jahani's "extreme limitations [on Plaintiff's functional capacity] are not reasonably compatible with the finding." (Admin. at 18.) Plaintiff argues that the MRI records support Dr. Jahani's RFC opinion, but the October 2005 MRI indicates that Plaintiff's spine was "normal" and it showed "[n]o significant degenerative disc disease." (*Id.* at 91.) The February 2006 MRI indicated only "mild" spinal impairments with a "[s]mall central disc protrusion." (*Id.* at 114.) A "mild loss of normal cervical lordosis" does not comport with Dr. Jahani's opinion that Plaintiff had radical limitations on her ability to sit, stand or walk. Put another way, Dr. Jahani's drastic restrictions on Plaintiff's functional capacity lack "medically acceptable clinical and laboratory diagnostic techniques."

Moreover, there is substantial evidence in the record to support the ALJ's conclusion that Dr. Jahani's RFC opinion is not consistent with other medical evidence in the record. Dr. Jahani's own records establish that Plaintiff benefitted from the medications and, by the beginning of 2007, Dr. Jahani described Plaintiff's condition as stable. Most critically, in January 2007, Dr. Jahani opined that Plaintiff might be able to perform sedentary work despite her alleged symptoms and limitations. These relatively positive opinions regarding Plaintiff's condition contrast markedly with Dr. Jahani's RFC assessment and provide the ALJ a basis to reject Dr. Jahani's contradictory opinions under the standard set out by 20 C.F.R. § 416.927(d)(2).

Plaintiff's contention that the ALJ needed to mechanically apply each of the six factors from 20 C.F.R. § 404.1527(d) also lacks merit. The Tenth Circuit Court of Appeals held in *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), that an ALJ

need not expressly discuss each factor from the regulation in his written decision. Indeed, as *Oldham* points out, not every factor will apply in every case. *Id.* The ALJ needs only to provide a reviewing court with enough of an explanation of his analysis of a treating physician's opinion to allow the court to determine how much weight the ALJ accorded to the opinion and the reasons the ALJ gave the source that weight. *Id.*

In his written decision in this case, the ALJ described both the lack of objective medical evidence to support Dr. Jahani's RFC opinion and the inconsistencies between Dr. Jahani's RFC opinion and the other evidence in the record. As noted above, the ALJ found that the MRI evidence did not support Dr. Jahani's opinions. The ALJ also explained that Dr. Jahani's RFC opinion limited Plaintiff's ability to concentrate, but that this opinion conflicted with Dr. Jahani's other statement that Plaintiff had no psychological conditions. Although these explanations do not directly track the factors in 20 C.F.R. § 404.1527(d), they more than allow this Court to properly review the ALJ's analysis on appeal.

Thus, the Court concludes that the ALJ's decision not to give controlling weight to Dr. Jahani's RFC opinion is supported by substantial evidence in the record and the ALJ complied with applicable legal standards by providing specific, legitimate reasons for his decision to do so.

### III. THE ALJ DID NOT NEED TO RE-CONTACT PLAINTIFF'S TREATING PROVIDER

Under the Social Security Regulations, an ALJ is authorized to re-contact a claimant's doctor for additional information if, on the basis of the medical evidence before him, the ALJ cannot determine whether the claimant is disabled. *See* 20 C.F.R.

§ 1512(e) ("When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision."). However, the rejection of a treating physician's opinion does not automatically trigger the ALJ's duty to re-contact the physician. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). Instead, it is inadequacy of the medical evidence that requires an ALJ to obtain additional information. *Id.*

Plaintiff's argues that the ALJ should have re-contacted Plaintiff's treating physician because the record was inadequate to make a disability determination. The Commissioner responds that Plaintiff has failed to identify any inadequacies that would trigger the duty to re-contact Dr. Jahani.

In this case, the ALJ implicitly concluded that the record contained adequate evidence to determine whether Plaintiff was disabled. Even though the ALJ rejected Dr. Jahani's opinion regarding Plaintiff's functional limitations, the ALJ does not mention that the evidence was inadequate or insufficient. Indeed, the record still contained ample objective evidence from which the ALJ could make a disability determination. For example, the ALJ could rely on the two separate MRIs in the record, both of which related directly to Plaintiff's impairment. The ALJ could also rely on the portions of Dr. Jahani's opinions that the ALJ found consistent and supported by objective evidence, *e.g.*, Dr. Jahani's notes regarding Plaintiff's response to various medications. The ALJ also had the substantial volume of physical therapy records at his disposal.

Therefore, the Court finds substantial evidence in the record to support the ALJ's decision not to re-contract Dr. Jahani.

## **CONCLUSION**

Plaintiff presents numerous issues for review.  Plaintiff's arguments raise interesting issues, but the Court concludes that none require remand or reversal of the ALJ's decision.

Accordingly, the decision of the Commissioner is AFFIRMED AND ADOPTED.

DATED:  June 3, 2009.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge